

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 9 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ERA MURPHY,                          §
                                     §
            Plaintiff,               §
                                     §
VS.                                  §    NO. 4:07-CV-605-A
                                     §
JOHN PETER SMITH HOSPITAL,           §
                                     §
            Defendant.               §

MEMORANDUM OPINION
AND
ORDER

Came on for consideration the motion for summary judgment

filed by defendant, Tarrant County Hospital District d/b/a John

Peter Smith Hospital, as to all claims filed against it by

plaintiff, Era Murphy. Plaintiff filed her response[1], and

defendant submitted its reply. Having considered the motion, the

response, the reply, the summary judgment record, and pertinent

legal authorities, the court has determined that the motion

should be granted.

_____

[1]In the first numbered paragraph of plaintiff's response, her counsel asks the court to deny the
summary judgment motion because defendant's counsel's failed to highlight portions of the appendix as
required by the court's scheduling order. Ironically, this objection is set forth in plaintiff's response,
which her counsel filed after the due date. The court prefers to decide this matter on the merits; thus, on
November 4, 2008, it granted plaintiff's motion to file the late response and accordingly will decline
plaintiff's request to deny the entire summary judgment motion due to lack of highlighting.

## Plaintiff's Claims

Plaintiff filed the instant action on October 11, 2007, and subsequently filed an amended complaint on January 25, 2008. She alleges that defendant discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and Chapter 21 of the Texas Commission on Human Rights Act, by allegedly failing to promote her and excluding her from participation in special projects and duties within the pharmacy, in particular fifteen identified assignments ("Assignments"), despite her twenty-year employment with defendant. Further, plaintiff complains that defendant retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

## II.

## The Motion for Summary Judgment

First, defendant maintains that plaintiff failed to file the instant action within ninety days of her receipt of a right to sue notice from the EEOC. Next, defendant contends that plaintiff failed to state a _prima facie_ case of race discrimination because

she did not express interest in most of the Assignments, and denial of the Assignments does not constitute an adverse employment action. Even if plaintiff established a <u>prima</u> <u>facie</u> case, defendant argues that it has articulated legitimate, non-discriminatory business reasons for making each of the Assignments and plaintiff is unable to prove those reasons are either pretext or that discrimination was one of the reasons for the decision. Finally, defendant asserts that plaintiff cannot establish a <u>prima</u> <u>facie</u> case of retaliation because she cannot show that defendant took any action against her that would have dissuaded a reasonable employee from making or supporting a charge of discrimination and, in any event, defendant has articulated legitimate, non-retaliatory reasons for its actions for which plaintiff is unable to prove pretext.

III.

<u>Undisputed Facts</u>

The facts recited under this heading are undisputed in the summary judgment record.

Plaintiff is an African-American woman who has been employed by defendant as a staff pharmacist since 1987. During the course of her employment plaintiff has been assigned a number of different roles in the pharmacy, including working in the front

area of the central pharmacy, the emergency room, intensive care unit ("ICU"), children's unit, and the operating room. In the course of her work plaintiff communicates with nursing staff and physicians, supervises pharmacy technicians, and is at times called upon to make life or death decisions for patients.

The director of defendant's pharmacy is Mr. Darryl Wilson ("Wilson"), who is African-American. Wilson began his employment with defendant in 1994; in 1995 he became director of the pharmacy and plaintiff's direct supervisor. Wilson assigns duties to the pharmacists and makes the final hiring decision as to new pharmacy employees.

Defendant's pharmacy has more than seventy employees, including forty-one pharmacists and thirty-eight pharmacy technicians. Nine of the pharmacists and eight of the pharmacy technicians are African-American; overall, forty-nine per cent of defendant's pharmacists, and twenty-one per cent of defendant's pharmacy technicians, are minorities. In every year since 2002, with the exception of 2007, Wilson has hired or allowed to transfer into the pharmacy an African-American pharmacist or pharmacy technician.

Defendant's pharmacists are paid on an hourly basis, and are paid overtime for all hours over forty they work each week. When

performing the Assignments, the pharmacists receive their regular rate of pay. No pharmacist has received a pay raise as a result of performing any of the Assignments. Plaintiff currently earns more than fifty dollars per hour, and she is one of defendant's highest paid staff pharmacists, earning over $100,000.00 in 2007.

No supervisory or management positions exist between Wilson and his staff pharmacists. Around the year 2000, Wilson posted a job vacancy for assistant director of the pharmacy. No one applied or was hired for the position, and the position has never been re-posted.[2] Plaintiff is familiar with defendant's internal job application process, which requires the employee to identify a vacant position posted on the hospital intranet and fill out a computer screen to apply for the position. Since commencement of her employment with defendant, plaintiff has never completed an internal application for another position with defendant.

Plaintiff has received performance evaluations during the course of her employment with defendant. While the evaluations contain many favorable comments, some also criticize plaintiff's interpersonal relationships or communication skills, and/or advise her to improve in those areas. For example, in a 1987-1988

---

[2]In September 2008 Wilson began a reorganization of the pharmacy, which will result in layers of management between the pharmacy director and staff pharmacists. Def.'s App. at 242.

evaluation her supervisor suggested that she "work on communication skills" and "attend a seminar on communication skills" and that she "could benefit greatly from some assistance in non-confrontational communication skills." Pl.'s App. at 14, 18. A second evaluation later in 1988 noted that the pharmacy had received complaints that plaintiff was argumentative and uncooperative when dealing with nursing staff, (id. at 20), became "excited and unreasonable" when presented with a problem or difficult situation (id. at 34), and stated that plaintiff's "value to the hospital is greatly minimized by her argumentive [sic] approach to problem solving," id. at 39. Evaluations in 1993-1994, 1998, 2000-2001, and 2005 all evidence similar concerns regarding plaintiff's communication skills and interpersonal relations. Wilson has also received complaints about plaintiff from her coworkers, some of whom are also African-American, regarding her confrontational, rude, or intimidating behavior.

At various times during her employment, plaintiff has refused to perform tasks assigned to her by Wilson. For example, at one time plaintiff asked Wilson to include her in patient profiling. After being assigned those duties, plaintiff subsequently instructed Wilson not to include her in those

activities. Plaintiff has also referred to Wilson as a "house slave." Def.'s App. at 61-62.

On July 12, 2006, plaintiff filed a charge of discrimination with the EEOC, alleging that defendant discriminated against her because of her race and that "since 2005 [she had] been excluded from participating in departmental pharmacy programs, denied leadership roles, and forced to work without scheduled time." Def.'s App. at 67. The EEOC issued its notice of right to sue on July 10, 2007.

On February 9, 2007, plaintiff was the pharmacist in the ICU; Dana Kelly, a pharmacy technician, was assigned to work with her. At 9:30 a.m., plaintiff sent the following email to Wilson:

> I am not supervising ANY technician today because direct supervision requires direct observation. I am therefore not responsible for the actions of any.

Def.'s App. at 124. At 10:44 a.m., Wilson responded:

> Your technician is Dana Kelly, she is very familiar with her duties being the unit technician, you will supervise her because she is supporting you and the patients in the unit areas. If you are not aware of her duties I suggest you read the email that was sent out describing the duties of the technicians. If you have questions please call me or email me with those questions. Once again you are responsible for her and her activities for the day.

Id. That afternoon, at 2:30 p.m., plaintiff replied:

> Direct supervision entails and includes direct

observation which I have not engaged in with any technician today. I am not legally responsible for what a technician does who I do not directly supervise. My license is not an 'open checkbook' for any technician to function under but not be accountable to. I do not directly supervise Dana nor am I able to observe ANY of her duties or any related correction or concern of errors, omissions, etc. which may occur during the course of her performance of her 'duties' because I am in 1 location and she is in another location making 'direct supervision' impossible. Therefore there is NO direct supervision of Dana by me....Who is actually observing Dana's work? Correcting any errors? Giving instruction and input? It is not me.

Id. On February 21, 2007, Wilson issued plaintiff a disciplinary

Performance Feedback Form, which indicated that her

"Insubordination and Failure to Cooperate" had resulted in this

"1st and final warning." Id. at 125. Although plaintiff signed

the form, she checked the box indicating that she did not agree

with the feedback and that she would follow up with a written

response.

On April 7, 2007, plaintiff made a comment regarding the KKK

in the presence of two coworkers, who then complained to Wilson.

Wilson referred the complaints to Katie Gossam ("Gossam"), an

African-American human resources consultant employed by

defendant, who investigated the matter. Plaintiff admitted she

made a statement using the term "KKK" but contended she used it

in a different context; however, Gossam concluded that plaintiff

made the complained-of statement. On May 1, 2007, Wilson issued plaintiff another Performance Feedback Form related to the KKK comment.

## IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on

mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

## V.

## Analysis

A. Timeliness of Plaintiff's Action.

Defendant first urges the court to dismiss plaintiff's entire action because she allegedly filed suit more than ninety days after receipt of her notice of right to sue from the EEOC. The EEOC mailed the notice on July 10, 2007; however, during her deposition plaintiff could not recall the exact date she received it. Defendant argues for a presumption that plaintiff received the notice on July 11, 2007, the same day defendant received it. Had plaintiff received the notice on July 11, 2007, this action,

filed October 11, 2007, would have been untimely. Plaintiff now claims that her records confirm she received the notice on July 13, 2007. As a factual dispute exists regarding the timeliness of plaintiff's action, the court will not grant summary judgment on this basis.

B.    Plaintiff's Claim of Race Discrimination.

To evaluate claims of race discrimination or retaliation absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). This framework, in turn, requires plaintiff first to make out a prima facie case.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination or retaliation arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions.  See McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999).  If defendant meets this burden of production, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real

discriminatory or retaliatory purpose."[3] <u>McCoy</u>, 492 F.3d at 557. This requires the plaintiff to rebut each non-discriminatory or non-retaliatory reason articulated by the employer. <u>See id.</u>

As plaintiff has offered no direct evidence of race discrimination, she must establish a <u>prima facie</u> case on the basis of race discrimination by showing (1) she belongs to a protected class; (2) she was qualified for the position sought; (3) she was not promoted or she suffered an adverse employment action; and (4) either the position was filled by someone not in the protected class, or she was not promoted because of her race. <u>See Alvarado v. Texas Rangers</u>, 492 F.3d 605, 611 (5th Cir. 2007); <u>Oden v. Oktibbha County, Miss.</u>, 246 F.3d 458, 468 (5th Cir. 2001).[4] Defendant argues that plaintiff cannot establish the second or third elements of her <u>prima facie</u> case. While the court is inclined to agree with defendant, it finds it unnecessary to

---

[3]Plaintiff may also rebut defendant's nondiscriminatory reason through evidence that the reason, while true, is only one of the reasons for its conduct, and the plaintiff's protected characteristic is another motivating factor (mixed-motive alternative). <u>See</u> <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004). In analyzing defendant's motion for summary judgment, the court will only address the pretext alternative, as plaintiff did not assert that defendant's decisions were based on "mixed motives," nor has the court found any evidence of such motives in the summary judgment record.

[4]Plaintiff sets forth a slightly different <u>prima facie</u> case where the second and fourth elements, respectively, are that she was "qualified for the position" and "replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." Pl.'s Resp. Br. at 13 (citing <u>Okoye v. Univ. of Houston Health Sci. Ctr.</u>, 245 F.3d 507, 512 (5th Cir. 2001). <u>Okoye</u> is a termination of employment, rather than failure to promote case. The court will analyze plaintiff's claims using the proper failure to promote <u>prima facie</u> case.

resolve that matter because plaintiff has so clearly failed to prove that defendant's legitimate, non-discriminatory reasons for making the Assignments are a pretext for discrimination.

Defendant has articulated legitimate, non-discriminatory reasons for each of its decisions relative to the Assignments. See Def.'s App. at 246-257. Wilson set forth the specific reasons why he made Assignments to particular pharmacists; in each case, he considered the other pharmacists better qualified than plaintiff for each Assignment. The court finds it unnecessary to detail each of defendant's reasons as to each Assignment, because plaintiff has adduced no summary judgment evidence to prove pretext as to any Assignment.

Plaintiff may show pretext by showing she was clearly better qualified than the successful applicant. See Price v. Fed. Express Corp., 283 F.3d 715, 723 (5th Cir. 2002); see also Eberle v. Gonzales, 240 F. App'x 622, 630 (5th Cir. 2007)(holding that "clearly better qualified" standard survived the Supreme Court's rejection of the "slap you in the face" standard). However, she makes no attempt to identify, as to any Assignment, summary judgment proof demonstrating that she was clearly better qualified for that Assignment. Instead, plaintiff relies generally on her seniority, length of employment, and "favorable

performance evaluations and raises" as the primary reasons why she claims to be better qualified for each Assignment. Pl.'s App. at 80. Plaintiff is mistaken. "[B]etter education, work experience, and longer tenure with the company do not establish that [an applicant] is clearly better qualified" for a particular position. Price, 283 F.3d at 723. Further, the uncontroverted summary judgment evidence demonstrates her supervisors' ongoing concerns with her confrontational communication style and interpersonal skills in general. While plaintiff clearly disagrees with these assessments, it is the supervisor's perception of her ability and qualifications, not plaintiff's, that determines whether she is clearly better qualified for a position or particular assignment. "Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995)(internal citations omitted). Plaintiff "cannot survive summary judgment merely because she disagrees with the [defendant's] characterization of her disciplinary history" or performance. Evans v. City of Houston, 246 F.3d 344, 355 (5th Cir. 2001); see also Shackelford, 190 F.3d at 408.

The cases plaintiff cites to support her claim of pretext are all inapposite to plaintiff for the same reason: in each case, the plaintiff applied for a vacant position which the employer had posted and for which it sought applicants. These facts are not present here and the cases fail to show defendant's reasons are pretext for discrimination.

Plaintiff rests much of her discrimination claim on Wilson's statement allegedly made in 2002 or 2003 that he was not going to hire any more blacks. The court finds Wilson's comment to be no more than a stray remark that offers plaintiff no support for her claims.

Comments in the workplace may provide evidence of discrimination only if they (1) relate to the plaintiff's protected class; (2) are proximate in time to the adverse employment decision at issue; (3) are made by an individual with authority over that decision; and (4) are related to the employment decision at issue. See Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 404 (5th Cir. 2001). Plaintiff was hired in 1987; Wilson's comment in 2002 or 2003 obviously had no bearing on that hiring decision. The comment was also too remote in time to any of the Assignments, which plaintiff contends were

made in 2005 or later. Wilson only allegedly said he would not "hire" any more blacks; nothing in the summary judgment record shows that Wilson said he would not "promote" or "give assignments" to blacks.[6] Finally, it is undisputed that since 2002 Wilson has hired blacks or allowed blacks to transfer into the pharmacy. Wilson's remark is no evidence of race discrimination and is insufficient to show pretext.

Plaintiff also asks the court to consider as "Me Too" evidence the fact that Wilson allegedly repeated his comment about not hiring blacks to others in the pharmacy. Plaintiff

> submits that this "Me Too" evidence is relevant and material on the issue of discriminatory intent by [defendant] since it involved statements by the same supervisor to other personnel in the pharmacy department that Wilson's intent was not to hire more African American pharmacists, leading to the inference that his refusal to send Plaintiff to participate in additional training and special projects was motivated by such discriminatory intent.

Pl.'s Resp. Br. at 16. Plaintiff urges the court to accept her "Me Too" evidence pursuant to the Supreme Court's decision in Sprint/United Management Co. v. Mendelsohn, ___ U.S. ___, 128

---

[6] In her affidavit submitted in support of her response, plaintiff for the first time makes the conclusory allegation that Wilson said he would not hire "or promote" any more blacks. Pl.'s App. at 81. This allegation is contrary to plaintiff's sworn deposition testimony and the summary judgment record. Plaintiff cannot use unsupported allegations, contrary to her own sworn testimony, to defeat summary judgment. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

S.Ct. 1140 (U.S. 2008). <u>Mendelsohn</u> requires an analysis of such evidence that is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." <u>Id.</u> at 1147. The court finds such evidence is not probative of any discriminatory intent towards plaintiff. As discussed, the comment occurred long after plaintiff was hired, did not relate to promotions, job assignments, or even to plaintiff generally, and was far too remote in time from the Assignments to evidence any discriminatory intent. The generalized comment, regardless of who heard it, fails to rebut any of Wilson's particularized reasons for making the Assignments. The court will give this "Me Too" evidence the weight and consideration it deserves.[7]

C.   <u>Plaintiff's Retaliation Claim.</u>

Plaintiff claims she has submitted direct evidence of retaliation, namely, Wilson's comment that he would not hire any more blacks.[8] This stray remark fails to prove retaliation for

---

[7]Plaintiff contends that no other black employees were given Assignments, citing pharmacist Melissa Johnson's testimony. Pl.'s Resp. Br. at 15 (citing Pl.'s App. at 18). Plaintiff has misstated, ignored, or intentionally omitted summary judgment evidence to the contrary. On this same page of plaintiff's appendix, Johnson states that James Tabe and Vanessa Ward--both African-American--were given Assignments. The summary judgment evidence shows that Wilson also gave Assignments to African-American pharmacists Edith Mbachu and James Garrett. Plaintiff cannot create a fact issue by ignoring otherwise uncontroverted evidence.

[8]The response alleges that Wilson said he would not hire "or promote" any more blacks. Pl.'s Resp. Br. at 22. This statement is contradicted by the summary judgment evidence, including the

the same reasons it failed to establish discrimination based on race. See supra at 15-16.

Absent direct evidence of retaliation, plaintiff must establish a prima facie case by showing that: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. See McCoy, 492 F.3d at 556-57.

Defendant argues that plaintiff failed to establish a prima facie case of retaliation because she was not subject to an adverse action; plaintiff does not clearly address this argument.

Regardless of whether plaintiff established a prima facie case, she has failed to establish pretext. Plaintiff relies on Wilson's statement about not hiring blacks as proof of pretext, arguing that "[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." Pl.'s Resp. Br. at 23, citing Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307 (5th Cir. 2008), and Shackelford, 190 F.3d at 404.

---

deposition testimony of plaintiff, Mbachu, and Gardner, that Wilson said only that he would not hire any more blacks. Plaintiff cannot use unsupported allegations, contrary to her own sworn testimony, to defeat summary judgment. See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

Plaintiff's reliance on <u>Shackelford</u> and <u>Gillaspy</u> is misplaced, as the "suspicious timing" in those cases was extremely close--a matter of a few days to a week, or at most within the same month. Here, Wilson made the comment in 2002 or2003, while the alleged retaliation occurred in 2007. Such four- or five-year time span is far too attenuated to establish pretext or to establish the necessary causal connection. <u>See</u> <u>Strong v. University Healthcare Sys., L.L.C.</u>, 482 F.3d 802, 808 (5th Cir. 2007)("temporal proximity alone is insufficient" to prove retaliation, holding three and a half months between protected activity and termination insufficient to establish retaliation). Temporal proximity is similarly lacking between plaintiff's protected activity--filing her charge of discrimination--on July 12, 2006, and the performance feedback given on February 9, 2007, and April 7, 2007. <u>See id.</u>

Plaintiff also offers as evidence of pretext her conclusory allegation that she had previously expressed concern regarding supervising pharmacy technicians. The summary judgment evidence is clear that Wilson issued the disciplinary warning as a result of plaintiff's insubordinate refusal to follow her supervisor's directions, not because she had a concern about supervising pharmacy technicians. Plaintiff also claims the disciplinary

notice she received on April 7, 2007[9], regarding the "KKK" comment is evidence of retaliation, as she contends her alleged statement was inaccurate and taken out of context, and defendant believed the complaining pharmacists over plaintiff. Defendant offered the sworn affidavit of Gossam, an African-American human resources consultant, who investigated the complaint and found it credible. Defendant had a reasonable basis for issuing the April 7 disciplinary notice; the court will not second-guess an employer's business decisions. See Lemaire v. Louisiana Dept. of Transp. and Dev., 480 F.3d 383, 391 (5th Cir.2007). Plaintiff's subjective belief that she was right and defendant was wrong, without more, is insufficient to rebut defendant's reasons for the disciplinary action. See, e.g., Mire v. Texas Plumbing Supply Co., Inc., 286 F. App'x 138, 143-144 (5th Cir. 2008). As plaintiff offers no other evidence of pretext, her retaliation claim fails.

---

[9]According to the summary judgment record, the complaint was submitted April 7, 2007, while the disciplinary form was issued on May 1, 2007. This distinction is immaterial to the court's analysis.

VI.

Order

For the reasons discussed above, the court concludes that defendant's motion for summary judgment should be granted. Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Era Murphy, against defendant, Tarrant County Hospital District d/b/a John Peter Smith Hospital, be, and are hereby, dismissed with prejudice.

SIGNED November 19, 2008.

JOHN McBRYDE
United States District Judge